right our final case this morning is Burke versus City of Tahlequah 19-7056 Mr. Blakemore you may proceed thank you your honor my name is Bob Blakemore I represent the estate of Dominic Rollis in this case we are the appellant it's an appeal of a grant of qualified immunity on a use of deadly force case to City of Tahlequah police officers lieutenant Vic and officer Gardner it's actually I believe a pretty straightforward case there is dash cam video I'm sorry body cam video that I hope that the the courts have the our position that the district court erred in granting summary judgment as we believe that the evidence sufficiently shows for the purposes of summary judgment the reasonable jury could find facts supporting a violation of constitutional right that was clearly established at the time of defendants conduct the use of deadly force is justified under the Fourth Amendment only if a reasonable officer in the defendants position would have probable cause to believe that there was an immediate threat of serious physical harm to themselves or others and it's been specifically established and this this is a quote from the case that we we cite in the briefing Walker versus City of Orem it's been specifically established that where an officer has reason to believe that the suspect was holding only a knife not a gun and the suspect was not charging the officer it had made no slicing or stabbing motions toward him that it was unreasonable for the officer to use deadly force against that suspect applying those principles lieutenant Vic and officer Gardner used objectively unreasonable and excessive force in this case in particular at the time that he was shot by lieutenant Vic and officer Gardner mr. Rollins was quote armed only with a hammer from his garage he did not charge or lunge at the officers made no swinging or slashing motion toward them it was clearly established by August 12th 2016 when this incident occurred that the use of lieutenant Vic and officer Gardner shot this man dead in his garage who committed no serious crime the grant of summary judgment should be reversed this the position of the defendants in this case is that mr. Rollins was brandishing the throw it on assuming for a minute that a jury could view the the body cam evidence and conclude that we would would you agree that they that they had that they could use deadly force well I think your honor I think that that's the is it possible that a jury could interpret the video that way yes but for the purposes of summary judgment at the very least a jury could conclude that the evidence shows merely that mr. Rollins was moving the hammer back behind his head and defensive stance he also not only moved it laterally he also moved it vertically he moved it up right he moved it up and the second essentially the second that he moved the the hammer up the two officers began began shooting began yelling at him well when he moved when he moved it up they shot right he actually moved the the hammer in this direction again without slashing without throwing and and it's our interpretation again of the evidence and I think a reasonable jury could find that that that's just a defensive stance that it was at that moment that they began using deadly force in your your argument you said that he was in his garage in fact he wasn't in his garage was he he was in the garage of his ex-wife who had called the report the police and asked them to remove him how does that affect your analysis in terms of you know he was trespassing yeah yes yes and no I think that when you look at the entirety of the record at about six o'clock he was at the house of his ex-wife at his former house he still had possessions there including tools in the garage she'd allowed him to be there and then they actually even let let him her her car he took the car longer than she had anticipated came back around nine o'clock she believed that he was intoxicated and it was at that moment that she did call 9-1-1 and say rather calmly if you've heard the 9-1-1 call that you know my ex-husband's in the garage I think he's drunk he won't leave and that was the extent of it and it's gonna get ugly quick right so essentially there's a there's a couple of issues one of one of the issues that we have with the district courts decision is on the the first and the the third factors of the Graham v Connor test where he actually says that the court found that those factors favored the plaintiff but then really didn't circle back in and include that in any way or give it any weight in his in the court's decision it's our position that there was no reasonable suspicion to even search mr. Wallace under the circumstances let alone probable cause to arrest and that goes directly to the issue of whether the officers conduct themselves was reasonable and and how they handled this and whether or not their own conduct under Allen versus Muskogee contributed to the to this situation me I wrote that with regard to Savio's and Alan so you seems like you have two separate windows of time then entering the garage and then them when they're confronting mr. Wallace when he raises the hammer so now you're getting at the first window of time when they enter the garage in Savio's the majority interpreted Allen to say that in Allen of course the guy has a gun he's not hurting anybody and the officers rush up and start yelling at him an officer reaches in and said the yosa likens that case to this six-foot six man swinging a baseball bat in his reasonable to precipitously provoke this erratically behaving man and create this danger now what case law including Allen including Savio's would suggest that it was clearly established that they get this call you just pointed out that the 9-1-1 calls doesn't express any alarm they have no reason to think that this guy is like this baseball bat wielding man in Savio's or like the fellow in his driveway holding a gun suicidal in Allen they have no reason to suspect that this is going to escalate they walk calmly into the garage at that juncture would you agree that they haven't done anything remotely like Savio's around correct at that point when they enter the garage yes sir at that at that point in time I mean I we do believe it was inappropriate for them to to ask him to for the search he didn't he he did not consent to the search then he goes into his garage it's our position at that point you know just committed a constitute they may have committed a constitutional Fourth Amendment violation but I think you're acknowledging that they have it obviously this is not an unreasonable search case it's a unreasonable force case that they have it at that juncture precipitate precipitously provoked him to creating an S or the M's confrontation like Savio sir Alan right no it's it's at the point that they that they enter the garage back him into the essentially back him into the garage and then he picks up he picks up the hammer and it's at that point that I think it just completely got out of control with right and what case what case would have alerted these officers that if you have someone raising a hammer with that looks like you can tell from the video that it's a fairly close proximity that whether it's a he's not you're right he's not moving it but he is it is what it is so to speak you can tell that he's raising the hammer they're in close proximity what case would have alerted them to say that it's unreasonable to shoot that juncture unreasonable to shoot right well I think all that they've been yelling at him you know to put it down put it down he doesn't and he raises it so what what case you know Walker Walker's not that case is it Walker's the guy isn't he in the neighborhood and even said the O's doesn't rely on on Walker what so what case would have alerted them to that was unreasonable when he refused to drop the hammer to shoot oh I think it is I think it is Walker and and as cited in Walker it's a zoo shell versus versus Denver which are both cases again what we're talking about is we're not talking about a gun we're talking about a primitive I mean I wouldn't even say weapon it's a tool I mean that it's his hammer in his garage okay so it's not a we're not talking about a man with a gun it's at most a primitive weapon and similar to the the box cutter and Walker or what they believe to be a knife and as a shell it turned out to be a I think a nail clipper and I think that that statement again from from Walker is specific enough it's not it's not at the the high degree of generality of just citing the the the three Graham factors it's specific enough that it put them on notice that that if you're if the suspect has this type of primitive a tool or weapon and is not threatening the officers with it not make not charging them not making a stabbing or slicing motion then it's it's unconstitutional to use deadly force in this sir mr. Blake more could I could I use the zero back in on the video for a minute as to the question whether mr. Rawlitz was assuming a defensive posture or a hostile one is it is it your position that it that the video unambiguously shows that it was just defensive or are you saying that there's some ambiguity about that I believe it I believe it is a unambiguous but I I would concede that that somebody else could maybe come to a different determination on that and again that's that's a that's a classic that's a classic issue of fact and the courts even in qualified immunity on summary judgment are still to examine the facts and the light most favorable to the plaintiff in this case that didn't happen because it's a very reasonable interpretation I think I think unambiguous is that this as they're closing in on him and he's saying no no I didn't do anything wrong he's in his garage they're closing in on him yelling at him with their guns drawn and the the other officer officer read with his with his taser kind of closing in on him that this was more of like a defensive motion and and at the very least a reasonable jury and I see my my time is almost up I maybe I'll reserve the last 25 seconds in case for rebuttal thank you thank you counsel mr. what yes may it please the court Scott would here representing lieutenant Brandon Vic and officer Joshua Gerdner since we have a video in this case and the facts seem to be very little in law mr. Blackmore mentioned a moment ago the Walker versus Oram case which was decided in 2006 that case is so factually different than this case that case involved a call to the police to try to get the police to help a family find their suicidal son who was missing reportedly unarmed the police are at the home of the callers later on the son pulls in the driveway the police are present apparently the son gets out with a two-inch knife or a blade that's two inches long holding it to his wrist and according to the witnesses the police officer shot and killed him from a distance of 28 feet away that is not this case well there are some similarities I mean we're in both instances we're dealing with someone who is not currently in possession of all of his faculties here they know that this guy's intoxicated right I would agree with that too so they're not and while they might not 28 feet away they're still pretty far away unless you're dealing with Thor the overarching rule that before you can use deadly force you've got to be at risk yourself of deadly force yes or serious bodily injury he's got a hammer he's gonna have to throw it eight to ten feet based on the video I mean that would take a lot of force to throw it if the guy charged at him with the hammer I it seems to me it was pretty precipitous to shoot him when he doesn't have a weapon that can easily reach you and he's not coming towards you runner I don't know if you do a lot of home repairs or not but a two and a half pound framing hammer could probably be thrown 30 feet or 40 feet by a man like and in this case in that enclosed garage eight to ten feet away absolutely one lucky throw and the officer gets hit in the head it could kill him and I'm I don't mean to argue with you about that or the fact that it's so close that that's literally two steps that the suspect would have to take before he could get to officer Gerdner so I would have to respectfully disagree with you about that aspect of it about enough that the jury should get to decide no I mean there's a there's a district court I'm sorry a Tenth Circuit opinion that says a dangerous weapon is any weapon that can deliver a serious bodily injury or a death and did a claw hammer posed in such a way that mr. Wallace seemingly was prepared to use it would certainly give that indication to a reasonable officer on the scene so go ahead well let me link the video to the colloquy you've been having with with judge McHugh unless the video clearly shows otherwise don't we need to accept the plainest version of the events that mr. Wallace did not take hostile action no I don't think you need to do that because if an officer makes a reasonable mistake or errantly believes that the person is being hostile instead of holding the hammer in a defensive motion they're also entitled to have their use of force found to be constitutional this court has made recent decisions I think one of them was the Padilla vs. Dodge case it was a recent case and where the court talks about you don't have to wait until you see the glint of steel before taking action because if you wait longer than that it may be too late and and I think that also comes out of the estate of Larson vs. Murcase. In Padilla vs. Dodge the saying that when the officers are aware they're dealing with an impaired or emotionally distraught individual they have a heightened obligation than when they're dealing with someone who's not impaired yeah and I don't think just because you're intoxicated puts you into a new category I mean we arrest drunk drivers put them in jail treat them just like everyone else on a daily basis and you know I didn't see mr. mr. Rolla stagger I didn't see him slur his words and he addressed the officers and for the purposes of the record because the officers didn't rely on it in any way we didn't include any of the post-mortem findings because they simply didn't know about it. Well but they call to 911 he's here and he's drunk and it's going to get ugly. That's what the wife said correct yes so there is there a problem for your case that officer Gardner not only shot mr. Rawless when he was holding the the hammer up but shot him after he he he had come down towards the floor what about that last shot yeah he mr. Rawless did go to a kneeling position and groaned but he still had the hammer kind of up by his head posed as he was crouched down and that's what led officer Gardner to fire one more shot because the hammer could still be lodged they had no way of knowing that they had shot him I mean that that last shot is within a second or two of the first volley of shots that put mr. Rawless into the squatting position. Can I ask you I want to go back just a little bit in your colloquy with Judge McHugh so they're at eight feet away in the garage you're saying that because a hammer the side of a hammer could be extraordinarily dangerous and it is reasonable to anticipate deadly force being used against officer Gardner what exactly the same true in Seveos after all I think according to the majority opinion they were 10 to 12 feet for mr. Seveos he wasn't holding a gun he was holding a baseball bat obviously no baseball bat can extend 10 to 12 feet and they weren't also enclosed like they were here so that they could have retreated they could have increased the distance and yet the majority found not only that there was a constitutional violation but that it was a violation of clearly established constitutional right to you know to to fire holding a baseball bat and so why doesn't Seveos based on its interpretation of Allen provide the clearly established source for a violation of them shooting when mr. Rawless had raised the hammer two things first of all of course the Sabalas vs. Hest case you know put anyone on notice in 2016 just but it's early but that's why I say it was based on the interpretation of Allen which did yes right and early on I think yes mr. Blake more some questions that touched on that you know in both Allen and the husk case I mean we know we're going to deal with somebody who's deranged or dangerous and has a dangerous instrumentality we don't know that the danger does not arise in this case until all three officers are inside the garage and mr. Rawless goes to the workbench grabs a hammer turns around and confronts it so that that's that's the factual difference that sets this case apart from from the other two cases and if that if no one has any other questions that will conclude my argument thank you counsel mr. Blake more you have 25 seconds I believe I'll use these 25 seconds just to reiterate and this is from Casilla versus Hughes Supreme Court case that the clearly established law prong does not require a case directly on point for the right to be clearly established and I think that the existing authority that we cited is sufficiently put them on notice that this was unconstitutional thank you thank you thank you to both counsel we appreciate your arguments this morning this case will be submitted counsel are excused